# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

| | |
|---|---|
| RENEE WRIGHT, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> THOMAS J. VILSACK, ) <br> Secretary of the United States ) <br> Department of Agriculture, ) <br> ) <br> Defendant. ) | No. 4:20CV1185 JCH |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendant Thomas J. Vilsack's Motion for Summary Judgment, filed December 23, 2021. (ECF No. 25). The motion is fully briefed and ready for disposition.

## BACKGROUND

Plaintiff Renee Wright, a Black woman born in 1961, began working for the United States Department of Agriculture ("USDA" or "Agency") in February, 2012. (Defendant's Statement of Material Uncontroverted Facts ("Defendant's Facts"), ¶¶ 1, 2). At all relevant times, Plaintiff was employed as a Statistician with USDA National Agricultural Statistics Service ("NASS") Frames Maintenance Group ("FMG") in Olivette, Missouri. (*Id.*, ¶ 3).[1] FMG maintains lists sampling data of agricultural operators and businesses which are used to define target populations, and also draws samples for surveys used by NASS. (*Id.*, ¶ 6). Statisticians assist in these endeavors by collecting, processing, analyzing and updating data for agricultural

---

[1] Plaintiff began working as a Statistician in March, 2015, at the GS-9 level, and was promoted to GS-11 in March, 2017. (Defendant's Facts, ¶ 5).

operations. (*Id.*). Plaintiff's first-line Supervisor was Cathryn Scherrer. (*Id.*, ¶ 3).

According to Defendant, newly-hired Statisticians initially receive several days of training from their Supervisor focusing on administrative topics and the basics of work duties. (Defendant's Facts, ¶ 4). After that, the responsibility for training Statisticians moves to the Team Leaders, who are experienced Statisticians with demonstrated expert knowledge of the list frame policies and procedures used by Statisticians. (*Id.*). Team Leaders have wide discretion in how to train their group of Statisticians. (*Id.*).[2]

Plaintiff first contacted an EEO counselor with allegations on October 21, 2016, and on November 29, 2016, she filed USDA Complaint Number NASS-2017-00071 (the "2017 Complaint"). (Defendant's Facts, ¶ 15).[3] Plaintiff's allegations were that Defendant subjected her to discrimination and harassment on the bases of race (Black) and age, when (a) her Supervisor Scherrer issued her a rating of "fully successful" on her Annual Performance Appraisal on October 20, 2016, due in part to management's failure to establish production numbers for performance standards, which resulted in Plaintiff's not being promoted to a GS-11; and (b) on several dates between July 13, 2015, and October, 2016, Plaintiff was harassed when Scherrer belittled her work and talked down to her. (*Id.*, ¶ 16, citing Defendant's Exh. A, P. 1; Exh. C, PP. 2-3).[4] The allegations initially brought, investigated, and addressed in the Final

---

[2] Plaintiff disputes Defendant's claim that she received three days of training. (Plaintiff, Renee Wright, Disputes Defendant's Statement of Material Uncontroverted Facts ("Plaintiff's Response to Defendant's Facts"), ¶ 4). She further asserts that the manner in which one Team Leader trains his or her Statisticians can be rated as "incorrect" by other Team Leaders. (*Id.*).

[3] At the time she filed the 2017 Complaint, Plaintiff was working as a Statistician GS-9. (Defendant's Facts, ¶ 7).

[4] In her response, Plaintiff claims Scherrer "did everything within her power" to humiliate Plaintiff. (Plaintiff's Response to Defendant's Facts, ¶¶ 15-16). She asserts Scherrer never taught her anything, spoke differently to her than to others, and responded to any request from Plaintiff with a negative or insulting statement. (*Id.*). With respect to her Team Leader, Jennifer Ratliff, Plaintiff maintains she lacked skills to train effectively. (*Id.*).

Agency Decision ("FAD") involved only Supervisor Scherrer; now, however, Plaintiff alleges discrimination against Brad Parks, the Deputy Director of the National Operations Division[5], and Joseph Prusacki[6], the Director of the National Operations Division, as well. (*Id.*, ¶¶ 17-18, citing Defendant's Exh. C, PP. 95, 50, 55; Exh. I, PP. 10-11; A, PP. 1-2).

Plaintiff received the Report of Investigation ("ROI") on the 2017 Complaint on March 30, 2017. (Defendant's Facts, ¶ 19). Plaintiff initially requested an EEOC hearing, but ultimately withdrew her hearing request. (*Id.*). The Administrative Judge therefore remanded the case for a FAD on July 18, 2019. (*Id.*).

The FAD on the 2017 Complaint was issued on September 9, 2019. (Defendant's Facts, ¶ 20). In it Kirk Perry, Deputy Director of the Center for Civil Rights Enforcement, found that the weight of the evidence indicated discrimination and harassment did not occur with respect to the issues raised in the 2017 Complaint. (*Id.*, citing Defendant's Exh. A, PP. 9, 12).

Plaintiff again contacted an EEO counselor with allegations on June 25, 2019, and on August 27, 2019, she filed USDA Complaint Number NASS-2019-00826 (the "2019 Complaint"). (Defendant's Facts, ¶ 93, citing Defendant's Exh. B, P. 1).[7] Plaintiff's allegations were that Defendant subjected her to discrimination on the bases of disability (unspecified)[8] and reprisal (prior EEO activity), when, on June 25, 2019, during her third quarter performance

---

[5] Parks was Plaintiff's second-level supervisor, and Scherrer's first-level supervisor. (Defendant's Facts, ¶ 24).
[6] Prusacki was Plaintiff's third-level supervisor, and Scherrer's second-level supervisor, for the relevant time period. (Defendant's Facts, ¶¶ 101-102).
[7] At the time Plaintiff filed the 2019 Complaint, she was working as a Statistician GS-11. (Defendant's Facts, ¶ 8).
[8] According to Defendant, Plaintiff's disability consists of mobility issues with her knees and ankles, slipped disc, and osteoarthritis. (Defendant's Facts, ¶ 94). Plaintiff responds that "[t]he employer doesn't need to know what my disability is." (Plaintiff's Response to Defendant's Facts, ¶ 94).

review, Plaintiff learned she was not eligible for a promotion to GS-12 due to her low performance productivity numbers, which she attributed to management's failure to assign her to a record linkage project, as they did for her similarly situated colleagues. (*Id.*, ¶ 94, citing Defendant's Exhs. B, PP. 1-2; D, PP. 3, 11-12, 13, 148, 154; G, PP. 76:18-77:13, 81:16-20, 82:9-14).[9] Plaintiff directed her allegations of discrimination in the 2019 Complaint at Scherrer and Prusacki. (*Id.*, ¶ 98, citing Defendant's Exh. B, P. 2).

Plaintiff received the ROI on the 2019 Complaint on March 19, 2020. (Defendant's Facts, ¶ 96). She requested a FAD based upon the record on April 9, 2020, and the FAD on the 2019 Complaint, issued June 4, 2020, concluded that Plaintiff was not discriminated against as alleged. (*Id.*, ¶¶ 96-97, citing Defendant's Exh. B, PP. 10, 12).

Plaintiff filed her original Complaint in this Court on August 30, 2020. (ECF No. 1). In her Amended Complaint, filed March 5, 2021, Plaintiff lodges claims based on discrimination under Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), the Age Discrimination in Employment Act of 1967, as amended ("ADEA"), and the Americans with Disabilities Act of 1990, as amended ("ADA").[10] As stated above, Defendant filed the instant Motion for Summary Judgment on December 23, 2021, claiming there exist no genuine issues of material fact and Defendant is entitled to judgment as a matter of law. (ECF No. 25).

## SUMMARY JUDGMENT STANDARD

---

[9] Plaintiff claimed that an assignment to the record linkage project would have provided her with the opportunity to increase her numbers to meet promotion criteria, as it did for other Statisticians. (Defendant's Facts, ¶ 94).

[10] The Court notes that federal employees claiming disability discrimination are protected by the Rehabilitation Act of 1973, not the ADA. There generally is not a material difference between the terms of the statutes, however. *See Clayton v. DeJoy*, No. 18CV1039 JAR, 2020 WL 6822641, at *18 n. 5 (E.D. Mo. Nov. 20, 2020), citing *Lewis v. Johanns*, 180 F. App'x 599, 601 (8th Cir. 2006).

The Court may grant a motion for summary judgment if, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The substantive law determines which facts are critical and which are irrelevant. Only disputes over facts that might affect the outcome will properly preclude summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id*.

A moving party always bears the burden of informing the Court of the basis of its motion. *Celotex*, 477 U.S. at 323. Once the moving party discharges this burden, the nonmoving party must set forth specific facts demonstrating that there is a dispute as to a genuine issue of material fact, not the "mere existence of some alleged factual dispute." Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 247. The nonmoving party may not rest upon mere allegations or denials of its pleadings. *Anderson*, 477 U.S. at 256.

In passing on a motion for summary judgment, the Court must view the facts in the light most favorable to the nonmoving party, and all justifiable inferences are to be drawn in its favor. *Anderson*, 477 U.S. at 255. The Court's function is not to weigh the evidence, but to determine whether there is a genuine issue for trial. *Id*. at 249.

## DISCUSSION

**I.    Disparate Treatment Discrimination Claims Under Title VII And The ADEA**

When analyzing a Title VII race discrimination claim, the Court applies the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Under this framework, Plaintiff first must establish a prima facie case of discrimination. "A prima facie case of discrimination requires that the plaintiff '(1) is a member

of a protected group; (2) was meeting the legitimate expectations of the employer; (3) suffered an adverse employment action; and (4) suffered under circumstances permitting an inference of discrimination.'" *Schaffhauser v. United Parcel Serv., Inc.*, 794 F.3d 899, 903 (8th Cir. 2015) (quoting *Davis v. Jefferson Hosp. Ass'n*, 685 F.3d 675, 681 (8th Cir. 2012)). Once the plaintiff establishes a prima facie case, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *Id.* "If the employer meets this burden, the presumption of discrimination disappears, requiring the plaintiff to prove that the proffered justification is merely a pretext for discrimination." *Id.* (internal quotation marks and citation omitted).

To establish a claim of age discrimination in violation of the ADEA, Plaintiff must show that she: "(1) was at least forty years old, (2) suffered an adverse employment action, (3) was meeting [her] employer's legitimate expectations at the time of the adverse employment action, and (4) was replaced by someone substantially younger." *Starkey v. Amber Enterprises, Inc.*, 987 F.3d 758, 763-64 (8th Cir. 2021) (internal quotation marks and citations omitted). "If the plaintiff establishes a prima facie case, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action. If the employer proffers such a reason, the burden shifts back to the plaintiff to show that the proffered reason was mere pretext for discrimination and that age was the 'but-for' cause of the challenged adverse employment action." *Id.* (internal quotation marks and citations omitted).

As noted above, Plaintiff claims she suffered from race and/or age discrimination when her Supervisor Scherrer issued her a rating of "fully successful" on her Annual Performance Appraisal on October 20, 2016, due in part to management's failure to establish production numbers for performance standards, which resulted in Plaintiff's not being promoted to a GS-

11.[11] The Court assumes without deciding that with this claim, Plaintiff successfully establishes a prima facie case of race and/or age discrimination.[12]

Defendant responds that in order to be eligible for a promotion, a person must be in a particular grade for one year and, among other things, demonstrate the ability to work successfully at the next grade level. (Defendant's Facts, ¶ 38). During the relevant years, Statisticians' performance was reviewed primarily by assessing productivity/quantity of work and quality/accuracy of work. (*Id.*, ¶ 40).

While Plaintiff's performance rating was completed by Scherrer, Plaintiff's Team Leader Ratliff provided Scherrer feedback concerning Plaintiff's work quality prior to the October 2016 appraisal. (Defendant's Facts, ¶ 68).[13] Ratliff testified that Plaintiff did "pretty good work," and that the quality of Plaintiff's work was gradually improving so the focus soon could switch to improving production quantity. (*Id.*, ¶ 69, quoting Defendant's Exh. C, P. 116). Scherrer thus rated Plaintiff as "fully successful" because she met the requirements of a GS-9 employee, but in order to warrant consideration for a promotion Plaintiff needed improvement with quality and quantity, and needed to learn and implement the mission elements effectively. (*Id.*, ¶ 70, citing Defendant's Exhs. A, P. 3; C, PP. 8, 97).[14] With these assertions, the Court finds Defendant

---

[11] While Plaintiff alleges the promotions of younger Caucasian employees were possible because they received an unfair advantage in terms of training and assignments, she admits to not knowing exactly what said employees were assigned. (Defendant's Facts, ¶¶ 31-32).

[12] Defendant maintains Plaintiff fails to establish her prima facie case of discrimination, because a "fully successful" performance rating does not constitute an adverse employment action. (Defendant Vilsack's Memorandum in Support of his Motion for Summary Judgment, P. 14).

[13] Plaintiff does not accuse Ratliff of discrimination. (Defendant's Facts, ¶ 47).

[14] Defendant claims that "[a]t the time of her October 2016 performance appraisal, Plaintiff was still in the 'learning phase' of her job, had limited knowledge of relevant policies and procedures, had low numbers the preceding year and was still producing lower numbers than would warrant a higher performance rating or a promotion." (Defendant's Facts, ¶ 72, citing Defendant's Exhs. A, P. 4; C, PP. 9, 97, 106, 109).

successfully articulates a legitimate, nondiscriminatory reason for the alleged adverse employment action, *i.e.*, the failure to promote.

The burden thus shifts back to Plaintiff to show that the proffered reason was mere pretext for discrimination. Plaintiff attempts to demonstrate pretext by pointing to younger, Caucasian employees who allegedly were treated differently. *See Schaffhauser*, 794 F.3d at 904 (holding pretext in a Title VII case may be established by showing that similarly situated employees were treated more leniently than Plaintiff). Specifically, she names Bedriena Uka, Amber Elliott and Jeremy Scott as similarly situated employees who were treated more favorably. (Defendant's Facts, ¶ 33).

"The test to determine whether employees are 'similarly situated' to warrant a comparison to a plaintiff is a 'rigorous' one." *E.E.O.C. v. Kohler Co.*, 335 F.3d 766, 775 (8th Cir. 2003) (citation omitted).

> Instances of disparate treatment can support a claim of pretext, but [plaintiff] has the burden of proving that he and the disparately treated [employees] were similarly situated in all relevant respects. Specifically, the individuals used for comparison must have dealt with the same supervisor, have been subject to the same standards, and engaged in the same conduct without any mitigating or distinguishing circumstances.

*Id.* at 775-776 (internal quotation marks and citations omitted).

The Court finds Plaintiff fails to demonstrate by a preponderance of the evidence that Uka, Elliott and Scott were similarly situated to her in all relevant aspects. *Kohler Co.*, 335 F.3d at 776. It is undisputed that none of the other three Statisticians was assigned to Ratliff, Plaintiff's Team Leader; instead, Uka and Elliott were assigned to Steven Parn, and Scott was assigned to Phillip Stiens. (Defendant's Facts, ¶ 34). Furthermore, while there were no specific

production standards in place in 2016[15], production numbers of all Statisticians were required to be of "good quality and quantity." (*Id.*, ¶ 75, citing Defendant's Exhs. A, P. 3; C, PP. 8-9, 96). For fiscal year 2016, when they were promoted to GS-11 Statisticians, Elliott's total completed task count was 40,423, and Uka's was 31,130. (*Id.*, ¶¶ 77, 78, citing Defendant's Exh. J, ¶¶ 22-24). With respect to Scott, at the time he was promoted to GS-11 Statistician during fiscal year 2017, his total completed task count was 27,511. (*Id.*, ¶ 79, citing Defendant's Exh. J, ¶ 25). By way of contrast, Plaintiff's total completed task count for fiscal year 2016 was 12,447. (*Id.*, ¶ 77). Defendant further provides evidence that during the relevant years Elliott, Uka and Scott all possessed a better grasp of relevant policies and procedures, required less assistance in completing assigned work, and made fewer errors than Plaintiff. (*Id.*, ¶¶ 78, 80, citing Defendant's Exh. J, ¶ 26).[16]

Upon consideration of the foregoing, the Court finds Plaintiff fails to prove that Defendant's proffered justification for failing to promote her was merely a pretext for discrimination. Defendant's Motion for Summary Judgment on Plaintiff's claims of disparate treatment race and age discrimination must therefore be granted.

**II.     Harassment/Hostile Work Environment**

In her Amended Complaint, Plaintiff claims that on several dates between July 13, 2015, and October, 2016, she was harassed when Scherrer belittled her work and talked down to her.

---

[15] The following fiscal year, 2017, production standards were put in place, and to qualify as a fully-successful GS-11 Statistician the task count was required to amount to 15,000. (Defendant's Facts, ¶ 76).

[16] Plaintiff alleges Supervisor Scherrer discriminatorily assisted other Statisticians by working with them and training them. (Defendant's Facts, ¶ 57). Scherrer testified that she would attempt to help if requested by a Team Leader or Statistician, but neither Plaintiff nor Ratliff ever asked for such individual assistance. (*Id.,* ¶¶ 57-58). Instead, Plaintiff admittedly made "every effort to avoid talking to [Scherrer]", because Plaintiff felt Scherrer was insufficiently positive about Plaintiff's performance. (*Id.*, ¶ 59, quoting Defendant's Exh. C, P. 67).

During the investigation of the 2017 Complaint, Plaintiff testified that she believed Scherrer's statements were insufficiently positive and encouraging, and that Scherrer told Plaintiff she "needed to get along with [her] peers." (Defendant's Facts, ¶¶ 88-89, quoting Defendant's Exh. C, P. 67). She further noted during her deposition for this case that on one occasion her work was measured inaccurately, although it is undisputed that when the error was brought to Scherrer's attention, Scherrer immediately agreed there had been a mistake. (*Id.*, ¶ 62, citing Defendant's Exh. G, PP. 57:4-58:24).[17] As further support for her claim of harassment/hostile work environment on the bases of race and/or age, Plaintiff repeats her assertions of inadequate training and assignments. (*Id.*, ¶¶90-91, citing Defendant's Exhs. C, PP. 53-54, 68-69; G, PP. 67:7-70:6).

"To establish a prima facie case for hostile work environment, a plaintiff must show: (1) she belongs to a protected group; (2) she was subject to unwelcome harassment; (3) a causal nexus exists between the harassment and the protected group status; (4) the harassment affected a term, condition, or privilege of employment; and (5) her employer knew or should have known of the harassment and failed to take proper action." *Warmington v. Board of Regents Of Univ. of Minnesota*, 998 F.3d 789, 799 (8th Cir. 2021) (citation omitted). "The fourth element—the harassment affected a term, condition, or privilege of employment—involves both objective and subjective components." *Id.* (internal quotation marks and citations omitted).

> To determine whether a complaint alleges an objectively hostile work environment, the court looks at the totality of the circumstances. The court may consider circumstances such as the frequency and severity of the discriminatory conduct, whether the conduct was physically threatening or humiliating, as opposed to a mere offensive utterance, and whether the conduct unreasonably interfered with the employee's work performance. A hostile work environment claim must allege more than a

---

[17] Plaintiff maintains that although Scherrer corrected the number, it was still inaccurate. (Plaintiff's Response to Defendant's Facts, ¶ 62).

> few isolated incidents. The alleged harassment must be so intimidating, offensive, or hostile that it poisoned the work environment.

*Id.* (internal quotation marks and citations omitted).

"The Supreme Court has cautioned courts to be alert for workplace behavior that does not rise to the level of actionable harassment." *Id.* (internal quotation marks and citations omitted). "The standards for a hostile environment are demanding, and conduct must be extreme and not merely rude or unpleasant to affect the terms and conditions of employment." *Id.* (internal quotation marks and citations omitted). "Courts must filter out complaints attacking the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing." *Id.* (internal quotation marks and citations omitted).

Upon consideration, the Court finds that the conduct about which Plaintiff complains is not severe enough to support her hostile work environment claim. *Id.* at 800. In other words, while the complained-of conduct can be characterized as rude or unpleasant, it was not severe enough to affect the terms, conditions, or privileges of Plaintiff's employment. *See Jackman v. Fifth Judicial Dist. Dept. of Correctional Servs.*, 728 F.3d 800, 806 (8th Cir. 2013) (internal quotation marks and citations omitted) ("The standard for demonstrating a hostile work environment under Title VII is demanding, and does not prohibit all verbal or physical harassment and it is not a general civility code for the American workplace….On their face, [the] comments are best characterized as offensive, but not so severe or pervasive as to permeate the workplace."). This portion of Defendant's Motion for Summary Judgment will therefore be granted.

### III. Disability Discrimination

The Rehabilitation Act provides that, "[n]o otherwise qualified individual with a disability….shall, solely by reason of her or his disability,…be subjected to discrimination under

any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency…." 29 U.S.C. § 794(a).  Claims of disability under the Rehabilitation Act are also analyzed under the *McDonnell Douglas* burden-shifting framework. Thus, to establish a claim under the language of the Rehabilitation Act, Plaintiff must show "[s]he was 'disabled,' was 'otherwise qualified,' and was the victim of 'discrimination' 'solely' because of [her] disability." *Peebles v. Potter*, 354 F.3d 761, 765 (8th Cir. 2004).  If the plaintiff succeeds, the burden of production then shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *Lipp v. Cargill Meat Solutions Corp.*, 911 F.3d 537, 544 (8th Cir. 2018).  If the employer is able to do so, "[t]he burden then returns to the plaintiff to show that the employer's proffered reason was a pretext for discrimination." *Id.* (citation omitted).  The Rehabilitation Act adopts the standards applied under the ADA to determine whether a violation of the Act has occurred. *Peebles*, 354 F.3d at 765.

In her Complaint, Plaintiff alleges she was discriminated against on the basis of her disability when she received a "fully successful" evaluation and was not promoted in June of 2019.  The Court assumes without deciding that she successfully establishes a prima facie case of disability discrimination.[18]

Defendant again responds that he possessed a legitimate, nondiscriminatory reason for the alleged adverse employment action taken against Plaintiff.  As noted above, in order to be eligible for a promotion, a person must be in a particular grade for one year and, among other things, demonstrate the ability to work successfully at the next grade level.  During the relevant years, Statisticians' performance was reviewed primarily by assessing productivity/quantity of

---

[18] Defendant acknowledges Plaintiff was considered by the Agency to be a person with a disability. (Defendant's Facts, ¶ 95).

work and quality/accuracy of work.  (Defendant's Facts, ¶ 106, citing Defendant's Exh. D, PP. 13-14, 155-156, 165).  In addition, other promotion considerations included Plaintiff's ability to be a resource for others and to work independently, and her willingness to help others,.  (*Id.*, ¶ 109, citing Defendant's Exh. D, PP. 13-14, 155-156).  While Scherrer promoted other employees to a GS-12 level during the relevant time period, she testified that those employees' work was of higher quality and more accurate, and they had greater production numbers commensurate with a GS-12 rating.  (*Id.*, ¶ 111, citing Defendant's Exh. D, PP. 13-14, 155-156).  With these assertions, the Court finds Defendant successfully articulates a legitimate, nondiscriminatory reason for the alleged adverse employment action, the failure to promote.

The burden thus shifts back to Plaintiff to show that the proffered reason was mere pretext for discrimination.  To do so, Plaintiff points to the same three non-disabled employees who allegedly were treated differently, namely Uka, Elliott and Scott.  *See Hustvet v. Allina Health System*, 910 F.3d 399, 412 (8th Cir. 2018) (holding pretext in an ADA case may be established by showing that similarly situated employees were treated differently).  Defendant counters that Uka transferred to another field office in October of 2017, and Scherrer did not recommend her for GS-12 promotion at or before the time of the transfer.  (Defendant's Facts, ¶ 113, citing Defendant's Exh. J, P. 11 n. 8).  With respect to Elliott and Scott, Defendant notes they were promoted to GS-12 during fiscal year 2018, when Elliott completed over 30,000 tasks, Scott completed over 31,000 tasks, and both had accuracy rates between 96.9 and 100 percent. (*Id.*, ¶ 114, citing Defendant's Exh. J, ¶ 33).  Elliott and Scott further required less assistance than Plaintiff, and regularly took the initiative to help others.  (*Id.*, ¶ 115, citing Defendant's Exh. J, ¶ 33).

In contrast, during fiscal year 2018 (the year prior to the one at issue, but in which Elliott

and Scott were promoted to GS-12), Plaintiff's completed task count was 17,769, with an accuracy rate below both Elliott and Scott. (*Id.*, ¶ 116, citing Defendant's Exh. J, ¶¶ 29, 33). For fiscal year 2019 Plaintiff increased her accuracy rate to 90 percent, but her productivity decreased to less than 9,000 tasks completed. (*Id.*, ¶ 117, citing Defendant's Exh. J, ¶ 30 and n. 7).[19] Defendant further asserts that in addition to insufficient production numbers and accuracy rates, Plaintiff still required repeated assistance from her Team Leader, and had not demonstrated the ability or willingness to help others. (*Id.*, ¶ 120, citing Defendant's Exh. J, P. ¶¶ 30-32).[20]

As noted above, "[t]he test to determine whether employees are 'similarly situated' to warrant a comparison to a plaintiff is a 'rigorous' one." *Kohler Co.*, 335 F.3d at 775. Upon consideration of the foregoing, the Court finds Plaintiff fails to demonstrate by a preponderance of the evidence that Uka, Elliott and Scott were similarly situated to her in all relevant aspects. *Id.* at 776. Again, none of the other three Statisticians was assigned to Ratliff, Plaintiff's Team Leader. Furthermore Elliott and Scott, the two Statisticians Scherrer promoted to GS-12, had higher production numbers than Plaintiff, and possessed a better grasp of the relevant policies and procedures. Plaintiff thus again fails to demonstrate that Defendant's proffered justification for not promoting her was merely a pretext for discrimination, and so Defendant's Motion for Summary Judgment on Plaintiff's claim of disparate treatment disability discrimination must be

---

[19] Defendant acknowledges that Plaintiff took a lengthy medical leave at the end of fiscal year 2019, but maintains Scherrer took that leave into account when assessing Plaintiff's productivity. (Defendant's Facts, ¶¶ 118, 119, citing Defendant's Exh. J, ¶ 30 and n. 7).

[20] Defendant notes that Plaintiff's performance has consistently improved, with her production numbers during fiscal year 2020 moving to 14,000, with a 96.1 percent accuracy rate. (Defendant's Facts, ¶ 121, citing Defendant's Exh. J, ¶ 34). During fiscal year 2021, Plaintiff completed over 19,000 tasks, with an accuracy rate of 97.5 percent. (*Id.*, ¶ 122, citing Defendant's Exh. J, ¶¶ 34-35). She further required less frequent help from her Team Leader, and showed a growing degree of knowledge of relevant policies and procedures. (*Id.*). As a result, Scherrer recommended her for a promotion to GS-12, which was to be effective in January, 2022. (*Id.*).

granted.[21]

## IV. Retaliation

Finally, Title VII prohibits retaliation against an employee "because [s]he has opposed any practice made an unlawful employment practice by [Title VII], or because [s]he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." *See* 42 U.S.C. § 2000e-3(a). Pursuant to the *McDonnell Douglas* burden-shifting framework, the employee has the initial burden of establishing a prima facie case of retaliation, which she meets by showing that, "(1) [s]he engaged in protected conduct, (2) [s]he suffered a materially adverse employment action, and (3) the adverse action was causally linked to the protected conduct." *Pye v. Nu Aire, Inc.*, 641 F.3d 1011, 1021 (8th Cir. 2011) (citation omitted). "If an employee establishes a prima facie case of retaliation, the burden shifts to the employer to articulate a legitimate, non-retaliatory reason for its action; if the employer does so, the burden then shifts back to the employee to put forth evidence of pretext, the ultimate question being whether a prohibited reason, rather than the proffered reason, actually motivated the employer's action." *Id.* (internal quotation marks and citations omitted).

In the instant case, Plaintiff asserts she engaged in protected activity by filing the 2017 EEO Complaint. She continues to assert she suffered an adverse employment action in the form

---

[21] As further support for her disability discrimination claim, Plaintiff asserts that at some time during 2016 or 2017, while they were alone Prusacki told Plaintiff there were too many Schedule A employees, *i.e.*, employees like Plaintiff who were considered disabled and hired by federal agencies without going through the traditional competitive selection process. (Defendant's Facts, ¶ 150, citing Defendant's Exhs. B, PP. 8-9; D, P. 149; G, PP. 97:18-98:10, 136:15-137:18; K, P. 1 n. 1). Director Prusacki has no recollection of attending a meeting with Plaintiff, and denies ever stating or implying there were too many Schedule A employees. (*Id.*, ¶ 151, citing Defendant's Exh. K, ¶¶ 3-7). More importantly, however, Prusacki did not assign Plaintiff work, did not evaluate her work, and did not make promotion recommendations regarding Plaintiff or other Statisticians. (*Id.*, ¶ 154, citing Defendant's Exhs. G, PP. 98:11-99:6; K, ¶¶ 11-14). The Court thus finds that with this allegation, Plaintiff fails to establish either disability discrimination or pretext on Defendant's part.

of not receiving a promotion to the GS-12 level in June of 2019. With respect to the causal connection between the two, however, Plaintiff presents no evidence other than the filing of the complaint itself. (Defendant's Facts, ¶ 158, citing Defendant's Exhs. B, PP. 9-10; G, PP. 99:13-103:17). Instead, she admits her retaliation claim is based merely upon an assumption. (*Id.*, ¶ 160, citing Defendant's Exh. G, P. 103:4-17).

Upon consideration the Court finds that with the foregoing, Plaintiff fails to establish a prima facie case of retaliatory discrimination.[22] This portion of Defendant's Motion for Summary Judgment will therefore be granted.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Thomas J. Vilsack's Motion for Summary Judgment (ECF No. 25) is **GRANTED**, and Plaintiff's claims are **DISMISSED** with prejudice. An appropriate Judgment will accompany this Memorandum and Order.

Dated this 24th Day of February, 2022.

/s/ Jean C. Hamilton
UNITED STATES DISTRICT JUDGE

---

[22] Again, even assuming Plaintiff established a prima facie case of retaliation, Defendant presents a legitimate, non-discriminatory reason for the failure to promote, and Plaintiff is unable to establish pretext.